FILED
John E. Triplett, Acting Clerk
United States District Court

By MGarcia at 9:38 am, Aug 13, 2020

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

DOREK ROBERSON,

               Plaintiff,

     v.

SANDI WEST, et al.,

               Defendants.

CIVIL ACTION NO.: 6:18-cv-35

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss, doc. 43, and Plaintiff's Declaration for Entry of Default, doc. 39, which the Court construes as a Motion for Entry of Default under Federal Rule of Civil Procedure 55. For the following reasons, I **DENY** Plaintiff's Motion for Entry of Default. I also **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust his administrative remedies. Furthermore, I **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.

## BACKGROUND

Plaintiff's claims arise out of a January 14, 2018 incident where Plaintiff alleges he was beaten unconscious by several gang members while incarcerated at Smith State Prison ("SSP"). Doc. 1 at 6. In November 2017, Plaintiff wrote to Defendant West, his Unit Manager, and Defendants Smith, Erin, and Clark, all Deputy Wardens, informing them that if he was placed in general population, there would likely be a conflict due to his cousin, who was also Plaintiff's

co-defendant in a criminal case, being housed at SSP.  Id. at 5.  Defendants took no action to

protect Plaintiff, and he was subsequently assaulted by various gang members.  Id.  The attack

left Plaintiff with two swollen eyes and multiple fractures to his face.  Id. at 10.  After the

assault, Lieutenant Whitefield took Plaintiff's statement in Tier II, but Plaintiff did not receive

medical treatment until approximately 15 hours later when he was taken to the hospital.  Id.

Plaintiff wrote only one grievance in relation to the attack, Grievance Number 258880,

filed January 19, 2018.[1]  Doc. 43-5.  In the grievance, Plaintiff wrote, "I have told the

administration at Smith State Prison, who have failed to take heed to my warning statement,"

further alleging he warned Defendant West about his fear of being attacked by the family

member of a victim in his criminal case.  Id.  Plaintiff recounts his pleas were ignored, and he

was later attacked by the victim's family member.  Id.  Georgia Department of Corrections'

("GDC") Counselor Atkinson requested a statement from Defendant West about Grievance

Number 258880.  Id. at 3.  Defendant West verified that no family member of Plaintiff's victim

lived in the unit Plaintiff claimed and asserted Plaintiff would not name his attacker or cooperate

further.  Id. at 4.  For these reasons, the Warden at SSP denied Plaintiff's grievance, which

Plaintiff acknowledged.  Id. at 6.  On March 12, 2018, Plaintiff filed an appeal for Grievance

Number 258880 accusing SSP of failing to investigate his claims.  Id. at 7.  Plaintiff filed his

Complaint in this case on April 2, 2018.  Doc. 1.  The GDC denied his grievance appeal on April

---

[1]      Between the alleged attack and the filing of his Complaint, Plaintiff submitted four grievances to
SSP officials.  Only Grievance Number 258880 is relevant to this case; the other three grievances are
irrelevant.  In Grievance Number 258881, filed January 19, 2018, Plaintiff complains of a defective tablet.
Doc. 43-6.  In Grievance Number 261850, filed March 9, 2018, Plaintiff complains of how he had not
eaten or gotten his personal property after moving cells.  Doc. 43-7.  Finally, in Grievance Number
262958, filed March 26, 2018, Plaintiff raises concerns about a corrections officer named Mr. Adam who
slammed Plaintiff's hand in a door flap while serving food.  Doc. 43-8.

24, 2018, because Plaintiff again failed to provide identifying information as to his attacker. Doc. 43-5 at 8.

After initiating this action, Plaintiff filed multiple motions to amend and to file supplemental complaints. Docs. 18, 19, 20, 22. On July 24, 2019, I directed service of Plaintiff's deliberate indifference to safety claims against Defendants West, Clark, and Erin and his deliberate indifference to serious medical needs claims against Defendants McIntosh and Whitefield. Doc. 25. Thereafter, Plaintiff filed another motion for leave to amend alongside another motion for leave to file supplemental complaints. Docs. 28, 29. The Court granted Plaintiff's motions to amend. Doc. 32. In the Second Amended Complaint and supplemental pleadings, Plaintiff asserted one additional claim against Defendants McIntosh and Whitefield for violating Plaintiff's Fourteenth Amendment due process rights. Doc. 34 at 9, 11.

Defendants executed waivers of service on September 30, 2019, which set the deadline for responsive pleadings to October 28, 2019. Doc. 35. Plaintiff filed a Declaration for Entry of Default on October 4, 2019, well in advance of Defendants' deadline to answer. Doc. 39. The Court granted Defendants' motion for an extension of time to file an answer or motion to dismiss, resetting Defendants' deadline to answer for November 11, 2019. Doc. 42. Defendants filed the instant Motion to Dismiss on November 6, 2019. Doc. 43.

In their brief, Defendants argue Plaintiff failed to properly exhaust all administrative remedies as set out in the GDC grievance policy. Doc. 43-3. Defendants provide seven supporting exhibits: (1) an affidavit from Sharon Osborn, the grievance coordinator at SSP, doc. 43-2; (2) the GDC's Statewide Grievance Procedure, doc. 43-3; (3) a copy of Plaintiff's grievance history, doc. 43-4; (4) a copy of Grievance Number 258880, doc. 43-5; (5) a copy of Grievance Number 258881, doc. 43-6; (6) a copy of Grievance Number 261850, doc. 43-7; and

3

(7) a copy of Grievance Number 262958, doc. 43-8.  Plaintiff responded to the Motion to

Dismiss, doc. 49, to which Defendants filed a Reply, doc. 51.  Plaintiff's brief, however, is not

responsive to Defendants' argument he failed to exhaust his administrative remedies.  Doc. 49.

Rather, Plaintiff attaches Grievance Number 272712, filed on August 20, 2018, four months after

filing his original Complaint.  Doc. 49-2.

## DISCUSSION

### I.    Plaintiff's Motion for Entry of Default

As a preliminary matter, the Court **DENIES** Plaintiff's Motion requesting entry of

default against all Defendants.  Doc. 39.  Plaintiff declares Defendants were served July 24,

2019; thus, by September 30, 2019, when Plaintiff filed the Motion for Entry of Default,

Defendants had failed to timely respond to his Complaint.  Id.  However, because Defendants

executed waivers of service, they had until October 28, 2019 to answer, which the Court

extended to November 11, 2019 on motion by Defendants.  Docs. 35, 42.  Therefore,

Defendants' Motion to Dismiss, filed November 6, 2019, is timely.  Doc. 43.

### II.   Defendants' Motion to Dismiss

#### A.    Proper Exhaustion Under § 1997(a)

##### 1.    PLRA's Exhaustion Requirement

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must

properly exhaust all available administrative remedies—the prison's internal grievance

procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C.

§ 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974

(11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections

officials time and opportunity to address complaints internally before allowing the initiation of a

federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding that the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting that an inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (emphasis retained) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018)

("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit." (emphasis retained) (quoting Higginbottom, 223 F.3d at 1261)).  An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit.  Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process.  Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

The procedural steps prisoners must follow to fully exhaust are set out by their prison's administrative grievance policies.  Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., No. 17-14278, 2018 WL 3861351, at *1 (11th Cir. Aug. 14, 2018) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison.").  Proper exhaustion requires prisoners do more than simply initiate a grievance; they must correctly follow all procedural rules set out in the institution's policy—including time limits—and must appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process.  Johnson, 418 F.3d at 1159 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."); Sewell, 2007

6

WL 201269 (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

    2.    *GDC Administrative Grievance Policies*

The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") IIBO5-0001.  Whatley I, 802 F.3d at 1208.  SOP IIB05-0001 contains the policy for general grievances, including grievances for deliberate indifference to safety and medical needs.  See Whatley v. Smith (Whatley II), 898 F.3d 1072, 1074 (11th Cir. 2018) ("To exhaust administrative remedies under the Georgia Department of Corrections Standard Operating Procedures ("SOP"), inmates must follow the . . . prison grievance process outlined in SOP IIB05-0001.").  Under SOP IIB05-0001, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" which "affects the offender personally" and which is not explicitly listed in the SOP as a "non-grievable issue."  Doc. 43-3 at 7.

Under SOP IIB05-0001, inmates must file grievances within 10 calendar days of becoming aware of the facts from which the grievance arises.  Whatley II, 898 F.3d at 1075; Shaw v. Toole, No. 6:14-CV-48, 2015 WL 4529817, at *5 (S.D. Ga. July 27, 2015).  The grievance is screened by a Grievance Counselor, who determines whether to accept the grievance for processing or reject it.  Shaw, 2015 WL 4529817, at *5.  Inmates may "hand deliver" a completed grievance form to any counselor, who will provide the offender with a receipt. Doc. 21-3 at 9.  If the grievance is accepted for processing, the warden has 40 days to review the grievance and determine whether to grant or deny it.  Shaw, 2015 WL 4529817, at *5.  If a grievance goes unanswered, the inmate may appeal the non-response after the warden's time to answer expires.  Id. ("An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden

7

responds to the original grievance; or when the time allowed for the warden's decision has expired."); see also Whatley I, 802 F.3d at 1208 ("If the warden does not respond within forty days . . . the prisoner may appeal[.]").  The inmate has seven calendar days from the date he receives the warden's response to his grievance to file a Central Office Appeal.  Doc. 43-3 at 14; Toole, 2015 WL 4529817, at *5.  To appeal, the incarcerated individual "must fill out and sign the Central Office Appeal Form . . . and give it to his/her Counselor."  Doc. 43-3 at 14; McIlwain v. Burnside, No. 5:17-cv-363, 2019 WL 984289, at *3 (M.D. Ga. Jan. 30, 2019) ("In order to successfully file an appeal, an inmate must fill out a Central Office Appeal Form, sign it, and give it to the appropriate counselor.").  The grievance counselor then provides the inmate a receipt, which is found at the bottom part of the appeal form.  Doc. 43-3 at 14.  The Commissioner then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender.  Id. at 15; Toole, 2015 WL 4529817, at *5.  The grievance process is not complete until the inmate receives the Central Office's response to his appeal.  Wright v. Fish, No. 3:19-cv-003, 2019 WL 2721222, at *6 (S.D. Ga. May 14, 2019).

### 3.  Standard of Review for Exhaustion

Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint.  Jones, 549 U.S. at 216; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  "In response to a prisoner lawsuit, defendants may file a motion to dismiss and raise as a defense the prisoner's failure to exhaust administrative remedies."  Pearson, 665 F. App'x at 867.  Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings."  White v. Berger, 709 F. App'x 532, 541 n.4 (11th Cir. 2017) (citing Bryant, 530 F.3d at 1376); Glenn v. Smith, 706 F.

App'x 561, 563–64 (11th Cir. 2017); Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record." (citing Bryant, 530 F.3d at 1376)).

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a).  541 F.3d 1077, 1080–82 (11th Cir. 2008).  First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  Id.; see also Bracero, 2018 WL 3861351, at *1.  This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust.  Glenn, 706 F. App'x at 563–64 (citing Turner, 541 F.3d at 1082); Pavao v. Sims, 679 F. App'x 819, 824 (11th Cir. 2017).  "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust."  Abram v. Leu, No. 17-12319, 2019 WL 76849, at *2 (11th Cir. Jan. 2, 2019) (quoting Whatley I, 802 F.3d at 1209)); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have

shown a failure to exhaust." <u>Bracero</u>, 2018 WL 3861351, at *1 (quoting <u>Whatley I</u>, 802 F.3d at 1209).

### B.     Applying the <u>Turner</u> Test

Defendants Clark, Erin, McIntosh, West, and Whitefield ("Defendants") argue the Court must dismiss Plaintiff's Complaint because he failed to exhaust all administrative remedies before filing, as required under the PLRA.  Doc. 43 at 7.  In his Second Amended Complaint and supplement, Plaintiff mentions only the warning letters he sent to Defendant West about the threat to his safety; Plaintiff does not mention his efforts to exhaust his administrative remedies.  Docs. 33, 34.  However, in Plaintiff's original Complaint, which is no longer the operative Complaint, Plaintiff asserts he filed a grievance which was denied, and he appealed the denial of that grievance to the warden.  Doc. 1 at 13–14.  Given the liberal pleading standard afforded pro se litigants, the Court finds this enough to satisfy step one of <u>Turner</u>.  Defendants agree, focusing their argument instead on step two of <u>Turner</u>.  Doc. 43 at 5.

At step two of <u>Turner</u>, the Court must make specific findings to resolve disputed factual issues related to exhaustion.  At the second step, the Court reviews Plaintiff's efforts to grieve Defendants' conduct related to the January 14, 2018 incident.  As discussed, Plaintiff filed only one grievance relating to the January 14, 2018 incident: Grievance Number 258880.  Moreover, Plaintiff filed no grievance relating to a due process claim against Defendants McIntosh and Whitefield.  Any grievance filed after Plaintiff's Complaint on April 2, 2018—including the grievance Plaintiff filed in his response—is irrelevant.  "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."  <u>Smith</u>, 491 F. App'x at 83.  Further, Plaintiff makes no claim that he filed a grievance relating to his due process claims against Defendants McIntosh and

Whitefield.  Even if Plaintiff were to argue that his due process claims were grieved in Grievance Number 258880, Plaintiff did not complete the entire administrative grievance process before filing his Complaint.  The evidence shows Plaintiff appealed the denial of Grievance Number 258880 on March 12, 2018.  Doc. 43-5 at 7.  In an affidavit, Grievance Coordinator Sharon Osborn testifies Plaintiff's appeal was not received by the Central Office until March 19, 2018.  Doc. 43-2 at 4.  The Central Office had 100 days to respond, and the appeal was denied on April 24, 2018.  Id.  However, Plaintiff filed his Complaint in this case on April 2, 2018, before receiving the denial of his appeal.  Doc. 1.  The facts and evidence show Plaintiff failed to wait to file his Complaint until receiving a denial of his appeal.  In other words, Plaintiff failed to fully exhaust his only grievance relating to the claims he made in his Complaint prior to the filing of his Complaint.  Smith, 491 F. App'x at 82 (finding a failure to exhaust where a prisoner plaintiff had not received the Commissioner's denial of his appeal nor waited the requisite time allowed to receive such a denial).  Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion.  Plaintiff's Complaint is due to be dismissed.

III. **Leave to Appeal** *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal.  See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a

frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim

or argument is frivolous when it appears the factual allegations are clearly baseless or the legal

theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v.

Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An in forma pauperis action is frivolous and not

brought in good faith if it is "without arguable merit either in law or fact."  Napier v. Preslicka,

314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085,

403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).  Based on the above analysis of

Plaintiff's claims, there are no non-frivolous issues to raise on appeal, and an appeal on these

claims would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff in forma

pauperis status on appeal.

### CONCLUSION

For the above reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion, doc.

43, and **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust his

administrative remedies.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to

**CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff in forma

pauperis status on appeal.  Finally, I **DENY** Plaintiff's Motion for Default Judgment.  Doc. 39.

The Court instructs any party seeking to object to this Report and Recommendation to

file specific written objections within 14 days of the date on which this Report and

Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address

any contention raised in the Complaint must also be included.  Failure to do so will bar any later

challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28

U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be

served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 13th day of August, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

13